FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 19, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TINA SMITH,<br><br>        Plaintiff,<br><br>  vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No. 1:17-cv-03020-FVS<br><br>REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 12, 13 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 12, 13. This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 15. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 12) be denied and Defendant's Motion (ECF No. 13) be granted.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11     At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17     If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

1  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

2  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

3        At step four, the Commissioner considers whether, in view of the claimant's

4  RFC, the claimant is capable of performing work that he or she has performed in

5  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

6  capable of performing past relevant work, the Commissioner must find that the

7  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

8  performing such work, the analysis proceeds to step five.

9        At step five, the Commissioner considers whether, in view of the claimant's

10 RFC, the claimant is capable of performing other work in the national economy.

11 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

12 must also consider vocational factors such as the claimant's age, education and

13 past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

14 adjusting to other work, the Commissioner must find that the claimant is not

15 disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

16 other work, analysis concludes with a finding that the claimant is disabled and is

17 therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

18       The claimant bears the burden of proof at steps one through four above.

19 *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

20 step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on August 13,

2013. Tr. 34, 187-95. Plaintiff alleged an onset date of November 1, 2009, which

was amended to August 13, 2013, at the hearing. Tr. 34. The application was

denied initially, Tr. 93-96, and on reconsideration, Tr. 109-10. Plaintiff appeared

at a hearing before an administrative law judge (ALJ) on July 22, 2015. Tr. 33-57.

On August 21, 2015, the ALJ denied Plaintiff's claim. Tr. 19-25.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

not engaged in substantial gainful activity since August 13, 2013, the application

date. Tr. 21. At step two, the ALJ found Plaintiff has the severe impairments of

degenerative disc disease and spondylosis of the cervical and lumbar spine, and

scoliosis with Harrington rods. Tr. 21. At step three, the ALJ found Plaintiff does

not have an impairment or combination of impairments that meets or medically

equals the severity of a listed impairment. Tr. 21. The ALJ then concluded that

Plaintiff has the RFC to perform light work with the following additional

limitations:

> [S]he can lift and/or carry 20 pounds occasionally and 10 pounds
> frequently; sit about 6 hours and stand and/or walk 3 hours in an 8-

hour day with regular breaks.  She has an unlimited ability to push/pull within these exertional limitations.  [She] can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds.  She can occasionally balance, stoop, kneel, crouch and crawl.  [She] can occasionally reach overhead.  She must avoid concentrated exposure to extreme cold, extreme heat, wetness, vibration, and hazards.  She needs to alternate between sitting and standing at will.

Tr. 21-22.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 24.  At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier II, assembler, and circuit board assembler. Tr. 24-25.  Thus, the ALJ concluded Plaintiff has not been under a disability from August 13, 2013, through the date of the decision.  Tr. 25.

On December 7, 2016, the Appeals Council denied review of the ALJ's decision, Tr. 1-4, making that decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1.    Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ properly evaluated Plaintiff's symptoms complaints. ECF No. 12 at 7.

**A.  Medical Opinion Evidence**

Plaintiff contends the ALJ erred in evaluating the medical opinions of William Drenguis, M.D., and Howard Platter, M.D.  ECF No. 12 at 9-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

(9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81

F.3d 821, 830-31 (9th Cir. 1995)).

       1.       *William Drenguis, M.D.*

      William Drenguis, M.D., examined Plaintiff and completed a physical

evaluation in February 2014. Tr. 340-45. Dr. Drenguis diagnosed disc disease and

degenerative joint disease in Plaintiff's cervical and lumbar spine and noted she

had a past surgical rod placement for scoliosis. Tr. 344. Functionally, Dr.

Drenguis opined Plaintiff's maximum standing and walking capacity is about three

hours in an eight-hour workday; maximum sitting capacity is about three hours;

she does best if she alternates sitting and standing every 30 minutes; maximum

lifting and carrying capacity is 20 pounds occasionally and 10 pounds frequently;

she may frequently balance and occasionally climb, stoop, kneel, crouch, and

crawl; she can frequently reach, handle, finger, and fee; and she has no

environmental limitations. Tr. 344-45.

1    The ALJ gave partial weight to Dr. Drenguis' opinion because it is generally

2  consistent with his exam findings such as full strength and movement throughout

3  the extremities.  Tr. 27 (citing e.g., Tr. 343).  The ALJ determined Dr. Drenguis'

4  findings regarding Plaintiff's ability to lift, carry, stand, and walk are supported by

5  his findings.  Tr. 24 (citing e.g., Tr. 342).  However, the ALJ rejected the sitting

6  and fingering limitations assessed by Dr. Drenguis.[1]

7    Because Dr. Drenguis' assessment of a sitting limitation was contradicted by

8  the opinion Dr. Platter, Tr. 81-85, the ALJ was required to provide specific and

9  legitimate reasons for rejecting Dr. Drenguis' sitting limitation.  *Bayliss*, 427 F.3d

10  at 1216.

11    The ALJ rejected the limitation on sitting no more than three hours in an

12  eight-hour work day because Dr. Drenguis did not explain the basis for this finding

13  and because his exam findings do not support the limitation.  Tr. 24.  A medical

14  opinion may be rejected if it is unsupported by medical findings.  *Bray*, 554 F.3d at

_____

16  [1] The ALJ found Plaintiff did not demonstrate any problems with grip strength or

17  hand movement and therefore rejected the fingering limitation assessed by Dr.

18  Drenguis.  Tr. 24.  Plaintiff does not challenge the ALJ's rejection of the fingering

19  limitation and the Court concludes the ALJ's finding in that regard is supported by

20  substantial evidence.

1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004);

*Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242

F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th

Cir.1992). Furthermore, a physician's opinion may be rejected if it is unsupported

by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875

(9th Cir. 2003). After reviewing Dr. Drenguis' opinion, the Court concludes this is

a sufficient reason for rejecting the sitting limitation.

Plaintiff notes Dr. Drenguis indicated Plaintiff is limited by lumbar

degenerative disc disease and degenerative joint disease as "explanation" for the

standing and walking limitations and for the sitting limitations, and contends that

the explanation was sufficient for standing and walking and therefore must be

sufficient for sitting. ECF No. 12 at 11. This argument stretches reasonableness,

as a restatement of the diagnosis does not explain the basis for the limitations

assessed. Plaintiff also argues the sitting limitation is justified by Dr. Drenguis'

observation that Plaintiff was "rocking and shifting back and forth in an attempt to

get comfortable" and imaging showing degenerative changes and a rod in

Plaintiff's spine. ECF No. 12 at 12 (citing Tr. 341, 343-44). The existence of

degenerative changes and a rod in Plaintiff's spine was not overlooked by the ALJ,

Tr. 21, but their existence alone does not justify any particular limitation, such as a

sitting limitation, without supporting evidence. Discomfort reflected by rocking

and shifting in the waiting room could have been attributable to a number of factors and, without more, does not reasonably justify a functional limitation on sitting for more than three hours in an eight-hour work day.[2]

The ALJ also rejected the sitting limitation based on Plaintiff's testimony that she rode in a car to Nevada and back, which the ALJ found would involve sitting for a length of time inconsistent with the limitation of sitting for a maximum of three hours during a work day. Tr. 24, 50. Defendant concedes this reason is not well-supported in the record. ECF No. 13 at 11. Nonetheless, the ALJ's other reasons for rejecting the sitting limitation are specific, legitimate, and supported by substantial evidence.[3]

---

[2] To the extent an ambiguity in the evidence could be construed, the ALJ is charged with resolving the conflict, not the Court. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[3] *See, e.g., Morgan*, 169 F.3d at 601-02 (finding one inadequate reason for rejecting a physician opinion did not negate the remaining good reasons). Therefore, the outcome is the same despite the improper reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir.

1

2.       *Howard Platter, M.D.*

2

Howard Platter, M.D., reviewed the record and noted severe impairments of

3

degenerative disc disease and osteoarthritis.  Tr. 81.  He opined Plaintiff can

4

occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand

5

and walk for a total of three hours, sit for a total of six hours in an eight-hour

6

workday, with unlimited push and pull.  Tr. 83.  Dr. Platter also assessed postural

7

limitations of occasional climbing ramps or stairs, balancing, stooping, kneeling,

8

crouching, and crawling, but Plaintiff should never climb ladders, ropes or

9

scaffolds.  Tr. 83-84.  He also found Plaintiff should be limited to occasional

10

overhead reaching bilaterally and avoid concentrated exposure to extreme cold or

11

heat, wetness, vibration, and hazards.  Tr. 84-85.

12

The ALJ gave great weight to Dr. Platter's opinion.  Tr. 23.  The ALJ noted

13

the opinion is consistent with the evidence as a whole, including evidence that

14

Plaintiff has full strength and range of motion throughout her extremities and is

15

able to tandem walk and heel and toe walk.  Tr. 23, 342.  The ALJ found the

16

recommendation of lifting and carrying up to 20 pounds and standing or walking

17

for three hours is appropriate.  Tr. 23, 83.

18

_____

19

2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of*

20

*Health and Human Servs.,* 734 F.2d 1378, 1380 (9th Cir. 1984).

1    Plaintiff contends Dr. Platter committed a "very serious error" in reviewing

2  the opinion of examining physician, William Drenguis, M.D.  ECF No. 12 at 9-

3  10.[4]  In reviewing the evidence, Dr. Platter stated:

4         William Drenguis, MD, opined that the claimant would be limited to
         largely sedentary (stand/walk limited to 3 hours cumulative) to light
5         (lift/carry 20#/10# occasionally/frequently), although the
         recommendation of alternating sit/stand every 30 minutes does erode
6         this to a less than sedentary level.  While the majority of the Drenguis
         opinion was given considerable weight, the alternate sit/stand portion
7         of the opinion was given limited weight as it was not entirely
         supported by the objective findings on exam, or a review of the record
8         as a whole.  It is also noted that while the claimant may "do best" if
         allowed to alternate sit/stand, the RFC is more concerned with her
9         maximum residual functional capacity.

10  Tr. 81.  Similarly, Dr. Platter later commented, "[w]hile most of the Drenguis

11  opinion was given considerable weight, the portion of the opinion regarding the

12  _____

13  [4] On reply, Plaintiff argues for the first time that the October 2013 opinion of

14  Norman Staley, M.D., another reviewing physician, was erroneously given great

15  weight by the ALJ.  ECF No. 14 at 2.  An argument not made in the opening brief

16  is waived.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir.

17  2009).  Dr. Staley's opinion, which includes the assessment that Plaintiff is capable

18  of sitting for six hours in an eight-hour work day, was reasonably given great

19  weight by the ALJ.  Tr. 23, 69-73.  Plaintiff incorrectly asserts that "[a]ll other

20  opinions [than Dr. Platter's] were given partial to little weight."  ECF No. 14 at 5.

1  need to alternate sit/stand every 30 minutes was given less weight, as it was not

2  well supported by the objective findings on exam, nor a review of the record as a

3  whole.  Tr. 83.

4      However, in noting the evidence considered, Dr. Platter reported that Dr.

5  Drenguis found Plaintiff's maximum standing and walking capacity is three hours

6  cumulative, and that her maximum sitting capacity is six hours.  Tr. 79.  This

7  statement is incorrect, as Dr. Drenguis actually assessed a sitting limitation of three

8  hours.  Tr. 344.  Plaintiff contends this is a "very serious error" and that "Dr.

9  Platter's understanding of Dr. Drenguis' opinion was that it supported that

10  [Plaintiff] would be able to perform full-time sedentary work."  ECF No. 12 at 10-

11  11 (citing Tr. 82).  Plaintiff's assertion is inaccurate.  Dr. Platter stated Dr.

12  Drenguis' opinion is consistent with "largely sedentary" but the recommendation

13  to alternate sitting and standing "does erode this to a less than sedentary level," Tr.

14  81, not that Plaintiff would be able to perform full-time sedentary work as Plaintiff

15  asserts.

16      Notwithstanding and more significantly, the Court's role is to determine

17  whether the ALJ's decision is supported by substantial evidence, *see Hill*, 698 F.3d

18  at 1158, and while the accuracy of an opinion relied upon by the ALJ is relevant to

19  that determination, a single error in a medical opinion does not render the ALJ's

20  reliance on the opinion overall improper or erroneous.  The issue is not whether

Dr. Platter's assessment is supported by substantial evidence; the issue is whether the ALJ's findings are supported by substantial evidence.[5]  The ALJ did not rely on Dr. Platter's erroneous statement regarding the sitting limitation assessed by Dr. Drenguis, but accurately discussed the limitations assessed by Dr. Drenguis and, as discussed *supra*, provided legally sufficient reasons for rejecting the sitting limitation.  Furthermore, while the ALJ gave great weight to Dr. Platter's opinion, the ALJ also gave weight to other evidence in the record.[6]  Thus, the ALJ's consideration of Dr. Platter's opinion is reasonable and supported by the record.

---

[5] Plaintiff notes Defendant concedes Dr. Platter misstated Dr. Drenguis' opinion and asserts "[t]he Commissioner argues that this error was harmless."  ECF No. 14 at 4.  Defendant makes no such argument, ECF No. 13 at 14, and "harmless error" involves analysis of the ALJ's decision, not a physician's opinion.

[6] Plaintiff's assertion that Dr. Platter's opinion "is entirely disconnected from the medical evidence" is hyperbolic and without basis in the record.  ECF No. 14 at 5.  Additionally, Plaintiff contends the error in Dr. Platter's statement "contradicts the ALJ's reasoning that it is 'consistent with the record.'"  ECF No. 14 at 4 (Plaintiff fails to cite the alleged quotation from the ALJ's decision, and the Court finds no such quotation).  Plaintiff fails to note that the ALJ actually found Dr. Platter's opinion is "consistent with the evidence as a whole," Tr. 23, which involves more

1

**B.     Plaintiff's Symptom Complaints**

2        Plaintiff contends the ALJ erred by improperly discrediting her symptom

3  complaints.  ECF No. 12 at 13-17.  An ALJ engages in a two-step analysis to

4  determine whether a claimant's testimony regarding subjective pain or symptoms

5  is credible.  "First, the ALJ must determine whether there is objective medical

6  evidence of an underlying impairment which could reasonably be expected to

7  produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal

8  quotation marks omitted).  "The claimant is not required to show that her

9  impairment could reasonably be expected to cause the severity of the symptom she

10  has alleged; she need only show that it could reasonably have caused some degree

11  of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal

12  quotation marks omitted).

13        Second, "[i]f the claimant meets the first test and there is no evidence of

14  malingering, the ALJ can only reject the claimant's testimony about the severity of

15  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

16  rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

17  citations and quotations omitted).  "General findings are insufficient; rather, the

18  _____

19  than Dr. Drenguis' opinion, and is a reasonable assessment of Dr. Platter's opinion

20  supported by substantial evidence.

1    ALJ must identify what testimony is not credible and what evidence undermines

2    the claimant's complaints."  *Id*. (quoting *Lester*, 81 F.3d at 834); *see also Thomas*,

3    278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings

4    sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

5    discredit claimant's testimony.").  "The clear and convincing [evidence] standard

6    is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759

7    F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278

8    F.3d 920, 924 (9th Cir. 2002)).

9    In making an adverse credibility determination, the ALJ may consider, *inter*

10   *alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

11   claimant's testimony or between her testimony and her conduct; (3) the claimant's

12   daily living activities; (4) the claimant's work record; and (5) testimony from

13   physicians or third parties concerning the nature, severity, and effect of the

14   claimant's condition.  *Thomas*, 278 F.3d at 958-59.

15   This Court finds that the ALJ provided several specific, clear, and convincing

16   reasons for finding Plaintiff's statements concerning the intensity, persistence, and

17   limiting effects of her symptoms not entirely credible.  Tr. 22-23.

18   First, the ALJ found the medical evidence is inconsistent with the severity of

19   Plaintiff's allegations.  Tr. 22.  An ALJ may not discredit a claimant's pain

20   testimony and deny benefits solely because the degree of pain alleged is not

supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v.

Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a

relevant factor in determining the severity of a claimant's pain and its disabling

effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2) (2011).[7]  Minimal

objective evidence is a factor which may be relied upon in discrediting a claimant's

testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005).

The ALJ summarized the objective evidence and exam findings inconsistent

with the severity of her allegations in detail.  Tr. 22.  Plaintiff does not address the

mild and normal exam findings listed by the ALJ, asserting without citation that

Plaintiff's complaints are corroborated by objective findings.  ECF No. 12 at 14.

Plaintiff primarily argues that spinal imaging reflects problems with her back, ECF

No. 12 at 13, but does not acknowledge that the ALJ found Plaintiff "has some

back and neck problems," and included those limitations supported by the record in

_____

[7] This regulation was revised effective March 27, 2017.  Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5882 (January 18,

2017).  Since the revision was not effective at the time of the ALJ's decision, it

does not apply to this case.

1  the RFC finding.  Tr. 22.  The findings cited by the ALJ reasonably support the

2  conclusion that the objective evidence is not consistent with the severity of

3  Plaintiff's allegations.

4      Second, the ALJ found Plaintiff's travel via car to Nevada and back was

5  inconsistent with her allegations.  Tr. 23.  As noted *supra*, Defendant conceded this

6  reason is not well-supported in the record.  However, to the extent the ALJ erred

7  by considering Plaintiff's long-distance car travel, the error is harmless because the

8  ALJ provided other clear and convincing reasons supported by substantial

9  evidence for finding Plaintiff's symptom testimony less than fully credible.  *See*

10  *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008)

11      Third, the ALJ found Plaintiff's poor work history reduced her credibility.

12  Tr. 23.  The claimant's work record is an appropriate consideration in weighing the

13  claimant's credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ observed that

14  Plaintiff had limited earnings over the previous 15 years, which does not enhance

15  Plaintiff's credibility.  Tr. 23, 202.  Plaintiff counters only that her back problems

16  are long-standing, ECF No. 12 at 13, which is insufficient to rebut this clear and

17  convincing reason for giving less weight to Plaintiff's symptoms complaints.

18      Fourth, the ALJ found Plaintiff's minimal medical treatment is unexplained

19  and she gave inconsistent information about prescription medication.  Tr. 23.  The

20  ALJ is permitted to consider the claimant's lack of treatment in making a

credibility determination.  *Burch*, 400 F.3d at 681.  Credibility is undermined "by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment.  While there are any number of good reasons for not doing so, a claimant's failure to assert one, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony." *Fair,* 885 F.2d at 603 (internal citations omitted).  Additionally, in making a credibility evaluation, the ALJ may rely on ordinary techniques of credibility evaluation.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ observed Plaintiff had not had any regular treatment in two years which reduced her credibility regarding allegations of disabling pain.  Tr. 23, 44.  Plaintiff was not able to explain why she has not seen a doctor.  Tr. 23, 43-44.  She testified she did not see a doctor because they only offered her pain pills, Tr. 43-44, but the ALJ noted there is no record of any such discussion, nor is there evidence that Plaintiff sought alternative treatment methods.  Tr. 23.  She testified she had taken Vicodin prescribed by Dr. Jackson, Tr. 44-45, but the last record from Dr. Jackson in September 2013 does not document a Vicodin prescription.  Tr. 23, 308.  The ALJ further noted there is no evidence that any provider ever prescribed Vicodin.  Tr. 23.  All of these factors reasonably support this clear and convincing basis for finding Plaintiff less than fully credible.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 13, be GRANTED.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider

additional evidence, or may recommit the matter to the magistrate judge with

instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C.

§ 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern

District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of

appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and

Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

**MANAGEMENT DEADLINE ACCORDINGLY.**

DATED March 19, 2018.

<u>s/Mary K. Dimke</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE